EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elba Torres Álvarez, t/c/c Elba Torres Matundan, t/c/c Elba Matundan, su esposo Mitchell M. Matundan Marisigan y la Sociedad Legal de Gananciales compuesta por ambos; Philip Conrad Matundan; y Kevin Conrad Matundan<br><br>Recurridos<br><br>v.<br><br>Centro de Patología Avanzada de Puerto Rico, C.S.P.; Dra. Delba I. Garrastegui Carde, su esposo, Dr. Francisco J. Vizcarrondo Terrón y la Sociedad Legal de Gananciales compuesta por ambos; Corporación X; Corporación de Seguros X, Y y Z; Sutano de Tal, A, B, y C.<br><br>Peticionarios | Certiorari<br><br>2015 TSPR 136<br><br>193 DPR ____ |

Número del Caso: CC-2014-868

Fecha: 13 de octubre de 2015

Tribunal de Apelaciones:

        Región Judicial de Bayamón, Panel VII

Abogados de la Parte Peticionaria:

        Lcdo. Carlos Morales Bauzá
        Lcda. María C. Rodríguez Miranda

Abogada de la Parte Recurrida:

        Lcda. Rosa M. Nogueras de González

Materia: Derecho Laboral – Despido Justificado en primera ofensa; Derecho Apelativo: deferencia a determinaciones de hechos del Tribunal de Primera Instancia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elba Torres Álvarez, t/c/c Elba Torres Matundan, t/c/c Elba Matundan, su esposo Mitchell M. Matundan Marisigan y la Sociedad Legal de Gananciales compuesta por ambos; Philip Conrad Matundan; y Kevin Conrad Matundan<br><br>Recurridos<br><br>v.<br><br>Centro de Patología Avanzada de Puerto Rico, C.S.P.; Dra. Delba I. Garrastegui Carde, su esposo, Dr. Francisco J. Vizcarrondo Terrón y la Sociedad Legal de Gananciales compuesta por ambos; Corporación X; Corporación de Seguros X, Y y Z; Sutano de Tal, A, B, y C.<br><br>Peticionarios | CC-2014-0868 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 13 de octubre de 2015.

Lamentablemente, hoy nos vemos obligados a atender una controversia que surge como consecuencia de una agresión en el lugar de trabajo. En particular, debemos determinar si, en el contexto de la empresa privada, el despido de una empleada que incurrió en la primera ofensa de agredir a otra empleada durante horas laborables y en presencia de otros empleados, fue justificado. Contestamos en la afirmativa. En consecuencia, dejamos sin efecto el dictamen

del Tribunal de Apelaciones y confirmamos la sentencia del Tribunal de Primera Instancia.

I.

En el 2005, la Dra. Elba Torres Álvarez comenzó a trabajar en el Centro de Patología Avanzada de Puerto Rico, CSP (Centro de Patología), como una de las patólogas a cargo de la institución.[1]

La Dra. Delba I. Garrastegui Carde y, su entonces esposo, el Dr. Francisco J. Vizcarrondo Terrón, eran los dueños del Centro de Patología. La doctora Garrastegui Carde, además, fungía como directora de la institución. El 10 de diciembre de 2010, esta cumplía años, por lo que varios empleados del Centro de Patología decidieron hacerle una celebración sorpresa en la oficina. Ese día, a eso del mediodía, la doctora Torres Álvarez salió de la oficina para comprarle un regalo a la doctora Garrastegui Carde, por lo que le pidió a la Sra. Johanna Reyes Millán, asistente administrativa de la empresa, que no empezaran la celebración hasta que ella regresara.

Más tarde ese día, varios empleados que ya habían

---

[1] Conforme estableció el Tribunal de Primera Instancia en sus determinaciones de hecho, la doctora Torres Alvarez firmó un contrato con el Centro de Patología, mediante el cual se convirtió en empleada de la institución de forma indefinida a cambio de un salario y otras compensaciones. Además, en virtud de ese contrato, esta también era contratista independiente para otras tareas adicionales que realizaba para el Centro de Patología y por las cuales recibía una compensación adicional. Apéndice, pág.9. Ese contrato disponía expresamente que estaría "gobernado" por las disposiciones de la Ley Núm. 80. No surge del expediente que las partes hayan controvertido este hecho.

terminado su jornada de trabajo pidieron cantarle cumpleaños a la doctora Garrastegui Carde ya que tenían que irse a sus casas. Así, se llevó a cabo la celebración sin la presencia de la doctora Torres Álvarez. La señora Reyes Millán se quedó en su oficina trabajando y no participó de la celebración. Posteriormente, cuando la doctora Torres Álvarez regresó a la oficina llamó vía telefónica a la señora Reyes Millán para preguntarle si ya se había efectuado la celebración. Esta le contestó en la afirmativa y le indicó que se había llevado a cabo porque varios empleados querían participar de la celebración antes de marcharse del laboratorio. La doctora Torres Álvarez se enfureció y le colgó el teléfono. Esa misma tarde, le pidió excusas a la doctora Garrastegui Carde por no haber estado presente durante la celebración y le entregó el obsequio que le había comprado. Esta le agradeció el detalle y le dijo que no se preocupara.

Al día siguiente, la doctora Torres Álvarez le indicó a la doctora Garrastegui Carde que estaba molesta con la señora Reyes Millán debido a que esta no siguió sus instrucciones el día anterior. Por esa razón, le solicitó una reunión con esta para discutir lo sucedido. La doctora Garrastegui Carde trató de persuadir a la doctora Torres Álvarez de que olvidara el suceso porque no era importante. No obstante, esta insistió en la reunión, la cual, por deferencia, la doctora Garrastegui Carde decidió llevar a cabo. Una vez se reunieron las tres en la oficina de la

doctora Garrastegui Carde, conforme a la versión de los hechos a la que el Tribunal de Primera Instancia le brindó entera credibilidad, la doctora Torres Álvarez comenzó a reclamarle a la señora Reyes Millán por lo sucedido. Esta le explicó que no la habían esperado porque algunos empleados habían terminado su jornada laboral y deseaban regresar a sus casas. Molesta por lo ocurrido, la doctora Torres Álvarez exigió reunir a los empleados que decidieron cantar cumpleaños sin su presencia para corroborar la explicación ofrecida, a lo que la señora Reyes Millán le respondió que eso era una "ignorancia". Apéndice, pág. 13. En ese momento, la doctora Torres Álvarez se molestó aún más y le expresó lo siguiente: "qué bueno que me fui ayer temprano porque si llego a verte no sé lo que sería capaz de hacerte". Apéndice, pág. 13. También le dijo, en un tono de voz alto, que era una ineficiente y mala administradora. En ese momento se caldearon los ánimos al punto que la señora Reyes Millán comenzó a llorar y no toleró permanecer allí, por lo que solicitó ser excusada y se retiró a su oficina.

La doctora Torres Álvarez se enojó más e interpretó que la señora Reyes Millán la había dejado con "la palabra en la boca". Apéndice, pág. 13. La doctora Garrastegui Carde le indicó que "ella había amenazado a la señora Reyes Millán y que esta se había puesto nerviosa y no podía continuar con la reunión". Apéndice, pág. 14. Debido a que la doctora Torres Álvarez insistió en que la reunión tenía

que continuar, la doctora Garrastegui Carde llamó por teléfono a la señora Reyes Millán para preguntarle si podía regresar a la reunión. Mientras lloraba, esta le contestó que no podía continuar con la reunión debido a que estaba muy nerviosa e incómoda con lo sucedido. La doctora Garrastegui Carde le informó lo anterior a la doctora Torres Álvarez y esta decidió dirigirse hacia la oficina de la señora Reyes Millán. Allí tocó la puerta y la señora Reyes Millán abrió bajo la impresión de que quien tocaba era la doctora Garrastegui Carde.

Conforme a la versión creída por el Tribunal de Primera Instancia, al abrir la puerta, la doctora Torres Álvarez rápidamente agarró fuertemente a la señora Reyes Millán por el brazo y comenzó a halarla hacia afuera de la oficina. Apéndice, pág. 14. Mientras ocurría el forcejeo entre ambas, la doctora Garrastegui Carde -quien había permanecido en su oficina trabajando- escuchó los gritos y se dirigió rápidamente hacia donde estaba ocurriendo el incidente. Cuando se percató del forcejeo que estaba sucediendo, se colocó entre ambas empleadas, y le dijo a la doctora Torres Álvarez que soltara a la señora Reyes Millán, que no podía agarrar así a ningún empleado. La doctora Garrastegui Carde tuvo que hacer fuerza con los dos brazos para lograr que la doctora Torres Álvarez finalmente soltara a la señora Reyes Millán. Cuando esta última logró zafarse, corrió fuera del Centro de Patología ya que temía por su seguridad. Es menester mencionar que la señora Reyes

Millán estaba embarazada al momento de los hechos. Una vez afuera, otro empleado del Centro de Patología se percató de lo sucedido y la llevó a su casa. Luego de que la señora Reyes Millán saliera de las facilidades, la doctora Torre Álvarez dijo en voz alta "yo soy la doctora Torres y a mí se me respeta". Apéndice, págs. 15-16. La doctora Garrastegui Carde le pidió que se calmara y le indicó que allí todos los empleados la respetaban. En ese momento, la doctora Garrastegui Carde notó que varios empleados del Centro de Patología se habían acercado al área para ver lo que estaba sucediendo.

Luego de llegar a su casa y contarle a su esposo lo acontecido, la señora Reyes Millán acudió a un cuartel de la Policía en Bayamón para presentar una querella en contra de la doctora Torres Álvarez. Posteriormente, un agente de la Policía acudió al Centro Patológico para entrevistar a esta última. En ese momento, la doctora Torres Álvarez le dijo a la doctora Garrastegui Carde lo siguiente: "tienes que ayudarme, esto es agresión es un delito criminal, me tienes que ayudar". Apéndice, pág. 17. Como consecuencia del incidente, la señora Reyes Millán no fue a trabajar los dos días siguientes porque no se sentía bien y estaba muy nerviosa. Eventualmente, decidió no continuar con la querella ni presentar una demanda civil porque estaba embarazada y no quería involucrarse en asuntos en los tribunales. Apéndice, pág. 19.

La doctora Garrastegui Carde compartió todo lo

acontecido con su entonces esposo, el doctor Vizcarrondo Terrón y decidieron, como directivos del Centro de Patología, que era necesario asesorarse legalmente. Así, acudieron ante el Lcdo. Iván Garau, quien les recomendó cesantear a la doctora Torres Álvarez porque no se podía permitir esa conducta en el lugar de trabajo. Sin embargo, decidieron que necesitaban una segunda opinión. Según la doctora Garrastegui Carde, la decisión de despedir a la doctora Torres Álvarez era muy difícil y dolorosa debido a su estrecha amistad y a que esta era una excelente patóloga. Su despido también afectaría el Centro de Patología porque se quedaría con una sola patóloga, lo que no era suficiente para todo el trabajo que tenían.

Ante ese cuadro, la doctora Garrastegui Carde se reunió con el Lcdo. Frank Zorrilla, quien le recomendó lo mismo que el licenciado Garau. Según el testimonio de la doctora Garrastegui Carde, el licenciado Zorrilla le indicó que debía cesantear a la doctora Torres Álvarez. Asimismo, le expresó que como patrono, el Centro de Patología era responsable de la seguridad de todos sus empleados y que si esa situación volvía a ocurrir, el patrono sería responsable. Así, los doctores Garrastegui Carde y Vizcarrondo Terrón decidieron finalmente despedir a la doctora Torres Álvarez. Esa decisión se la iban a informar personalmente en una reunión, pero esta no se llegó a celebrar debido a que la doctora solicitó excusarse porque no se sentía bien. Al próximo día, la doctora Torres

Álvarez se comunicó por teléfono con el doctor Vizcarrondo Terrón para conocer cuál era el propósito de la reunión a la que la habían citado. Este le indicó que la Junta de Directores del Centro de Patología, siguiendo la recomendación brindada por sus abogados, había tomado la decisión de cesantearla debido al incidente con la señora Reyes Millán. En ese momento le indicó a la doctora Torres Álvarez que estaba en disposición de aceptar su renuncia en lugar de despedirla, pero esta no aceptó, por lo que se le notificó que estaba despedida.

Es importante señalar que al momento de este incidente estaba en vigor el reglamento de trabajo, manual de empleado y normas de conducta del Centro de Patología, el cual fue preparado por la propia doctora Torres Álvarez, junto con la doctora Garrastegui Carde. Hay que destacar que previo al incidente que origina este caso, la doctora Torres Álvarez no había sido objeto de amonestaciones relacionadas con su desempeño en el Centro de Patología y sus supervisores estaban satisfechos con su trabajo.

A raíz de lo anterior, la doctora Torres Álvarez, su esposo, la sociedad de gananciales compuesta por ambos y los hijos de ambos, presentaron una demanda sobre despido injustificado, libelo, difamación, incumplimiento de contrato y daños y perjuicios en contra del Centro de Patología, la doctora Garrastegui Carde, el doctor Vizcarrondo Terrón y la sociedad legal de gananciales compuesta por ambos. Luego de un prolongado litigio que

duró aproximadamente cinco años, y que incluyó la celebración de un juicio en su fondo, el Tribunal de Primera Instancia desestimó la demanda en su totalidad. Además, debido a la ausencia total de prueba respecto a la causa de acción por libelo y calumnia, le impuso a la doctora Torres Álvarez el pago de $6,000 en honorarios de abogado por incurrir en temeridad.

Inconforme con esa determinación, la doctora Torres Álvarez acudió al Tribunal de Apelaciones mediante un recurso de apelación. Ese foro confirmó el dictamen del Tribunal de Primera Instancia, excepto en lo relativo a la causa de acción por despido injustificado, sobre la cual concluyó que erró el foro primario al desestimar la reclamación. Pese a las determinaciones de hechos del Tribunal de Primera Instancia, el foro apelativo intermedio entendió que el Centro de Patología, la doctora Garrastegui Carde y el doctor Vizcarrondo Terrón no demostraron que la doctora Torres Álvarez incurrió en una falta tan grave y de tal naturaleza que pusiera en riesgo el lugar de trabajo o a sus empleados y que, por tanto, justificara su despido ante una primera falta.[2] Según el Tribunal de Apelaciones, no se probó que las actuaciones de la doctora Torres Álvarez constituyeran una agresión o una amenaza, ni que

---

[2] Según la versión de la doctora Torres Álvarez, lo que en realidad ocurrió fue que esta "agarró por el brazo [a la señora Reyes Millán] para tranquilizarla, ya que justo frente a [su] oficina están ubicadas las escaleras y temía que pudiera ocurrir un accidente y se cayera por las escaleras". Oposición a alegato de la peticionaria, pág. 10. Esa versión de los hechos no fue creída por el Tribunal de Primera Instancia.

fueran parte de un patrón de conducta impropia o desordenada, por lo que no se justificaba su despido. Además, el foro apelativo intermedio destacó en su sentencia el hecho de que la señora Reyes Millán desistió del proceso criminal en contra de la doctora Torres Álvarez. Así, devolvió el caso al foro primario para que computara la suma correspondiente al pago de la mesada.

En desacuerdo, el Centro de Patología, la doctora Garrastegui Carde y el doctor Vizcarrondo Terrón acuden ante este Tribunal mediante un recurso de <u>certiorari</u> y nos solicitan que revoquemos la parte de la sentencia del Tribunal de Apelaciones en la que se determinó que no medió justa causa en el despido de la doctora Torres Álvarez. Plantean, además, que erró el foro apelativo intermedio al no otorgar deferencia a las determinaciones de hecho del Tribunal de Primera Instancia y sustituirlas por su propio criterio sin que existiese base racional para ese proceder. Finalmente, esbozan que erró el Tribunal de Apelaciones al requerir la comisión de un delito y la existencia de daños físicos para que un patrono pueda despedir a un empleado de forma justificada.

**II**

A. La Ley Núm. 80-1976, conocida como la Ley de indemnización por despido sin justa causa, 29 LPRA sec. 185a *et seq*. (Ley Núm. 80), tiene el propósito de proteger al empleado de actuaciones arbitrarias del patrono e imponer remedios económicos que desalienten la práctica de

despedir a los empleados injustificadamente. Romero v. Cabrera Roig, 191 DPR 643, 649-650 (2014). Esos objetivos se instrumentan a través del Art. 1 de la Ley Núm. 80, 29 LPRA sec. 185a, el cual dispone que los empleados de comercio, industria o cualquier otro negocio o sitio de empleo que (1) están contratados sin tiempo determinado; (2) reciban una remuneración, y (3) sean despedidos de su cargo sin que haya mediado justa causa, tienen derecho al pago de una indemnización por parte de su patrono, además del sueldo devengado, típicamente denominada como la mesada. Orsini García v. Srio. de Hacienda, 177 DPR 596, 620-621 (2009). La mesada es el remedio exclusivo disponible para los empleados despedidos injustificadamente, siempre y cuando no existan otras causas de acción al amparo de otras leyes que prohíban el despido y concedan otros remedios. Romero v. Cabrera Roig, supra, págs. 650-651. El monto de esa mesada dependerá del tiempo que el empleado ocupó su puesto y del sueldo que devengaba. Whittenburg v. Col. Ntra. Sra. Del Carmen, 182 DPR 937, 950 (2011).

El Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b, tipifica varias causales como justa causa para el despido de un empleado. Algunas de esas instancias son atribuibles a la conducta del empleado mientras que otras están relacionadas a aspectos económicos de la administración de una empresa. Romero v. Cabrera Roig, supra, pág. 652. Los incisos (b) y (c) del referido artículo disponen que será

justa causa para el despido "[q]ue el obrero siga un patrón de conducta impropia o desordenada" o la "[v]iolación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado", respectivamente. Sin embargo, esas dos instancias, al igual que las demás que se enumeran en la Ley Núm. 80, "son solo ejemplos de las posibles causas que constituyen justa causa para el despido". Miranda Ayala v. Hosp. San Pablo, 170 DPR 734, 738 (2007) (Sentencia). Esto se debe a que "el concepto justa causa es uno dinámico, que se nutre de múltiples y fluidas situaciones imposibles de prever". Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 243 (2001). La Ley Núm. 80 "no pretende, ni puede, considerada la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia". Íd. En otras palabras, la enumeración de escenarios que se consideran justa causa contenida en la Ley Núm. 80 no es taxativa. Íd.

Por esa razón, los patronos están en libertad de adoptar los reglamentos y las normas razonables que estimen necesarias para el buen funcionamiento de la empresa y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. Jusino et als. v.

Walgreens, 155 DPR 560, 573 (2001). Cuando un patrono despide a un empleado por una causal no enumerada en la Ley Núm. 80, nuestro análisis para determinar si esta constituye justa causa se basa en el principio rector de la Ley Núm. 80, contenido en el segundo párrafo de su Art. 2, supra, el cual establece lo siguiente: "No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento".

Con esa regla como norte, y a modo de excepción, hace más de treinta y cinco años reconocimos que la Ley Núm. 80 "no excluye de la sanción o despido en primera o única ofensa aquella falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran". Srio. del Trabajo v. ITT, 108 DPR 536, 543 (1979). Es decir, aunque la Ley Núm. 80 "no favorece el despido como sanción a la primera falta, ello podría considerarse justificado si dicha acción u omisión, por su gravedad y potencial de agravio, pone en riesgo la seguridad, el orden o la eficiencia que constituyen el funcionamiento del negocio". Rivera v. Pan Pepín, 161 DPR 681, 690 (2004). En esos casos particulares

> la falta o acto aislado que dé lugar al despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría una imprudencia esperar [a que se repita, para entonces proceder con el despido]". Feliciano Martes v. Sheraton, 182 DPR 368, 383 (2011)

(citando a <u>Srio. del Trabajo v. ITT</u>, <u>supra</u>, en la pág. 544).[3]

En <u>Torres Solano v. PRTC</u>, 127 DPR 499 (1990), validamos una disposición del reglamento de personal de la *Puerto Rico Telephone Company* que establecía que la agresión de un empleado a otro era justa causa para el despido, aun cuando fuera la primera ofensa del agresor. De esa forma, concluimos que el despido de un empleado que agredió a otro durante horas laborables y frente a sus compañeros fue justificado, dado que el efecto directo de la agresión fue la humillación y el menosprecio de la dignidad humana del agredido y la interrupción de las labores y el funcionamiento habitual de la agencia. <u>Íd.</u>, págs. 515-516. Aunque nuestros pronunciamientos fueron en el contexto de empleados públicos cobijados por la Ley de personal del servicio público de Puerto Rico, 3 LPRA sec. 1451 *et seq.,* no encontramos razón alguna para no aplicarlos en igual extensión a los empleados de la empresa privada cobijados por la Ley Núm. 80. El principio subyacente de esa norma es el mismo independientemente del tipo de patrono. **Después de todo, la dignidad y seguridad de un empleado público tiene el mismo valor que la de un empleado de la empresa privada.** Lo mismo sucede con la protección que el ordenamiento quiere brindar al ambiente y funcionamiento ordenado de los lugares de trabajo. A igual conclusión parece haber llegado el Departamento del Trabajo

---

[3] Véase, además, <u>Delgado Zayas v. Hosp. Int. Med. Avanzada</u>, 137 DPR 643 (1994).

y Recursos Humanos, pues en su interpretación oficial de la Ley Núm. 80 incluye el referido caso como aplicable a instancias donde un empleado es despedido por cometer una agresión en el lugar de empleo. Véase Departamento del Trabajo y Recursos Humanos, Guía revisada para la interpretación y aplicación de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 30 de junio de 2014, pág. 47.

Por otro lado, la Ley Núm. 80 establece un esquema probatorio mediante el cual una vez el empleado despedido demuestra que cumple con los requisitos para ejercer la causa de acción, es el patrono demandado quien tiene el peso de la prueba para establecer que el despido estuvo justificado. Díaz v. Wyndham Hotel Corp., 155 DPR 364, 378 (2001). Si logra probarlo, no estará obligado a pagar la mesada. Romero et als. v. Cabrera Roig et als., supra, pág. 652. En cambio, si no logra hacerlo, el obrero tendrá derecho a los remedios que provee la Ley Núm. 80.

B. En nuestro ordenamiento, los tribunales apelativos otorgan gran deferencia a las determinaciones de hecho, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los tribunales de primera instancia. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 770-771 (2013). Esa deferencia, como norma general, prohíbe que un tribunal apelativo sustituya las determinaciones de hecho de un foro inferior. Pueblo v. García Colón I., 182 DPR 129, 165 (2011). Esto se debe a que el foro primario es quien ve y escucha a los testigos y, por ende, está en

mejor posición para evaluar y aquilatar la prueba presentada en el juicio. Laboy Roque v. Pérez, 181 DPR 718, 744 (2011). Por lo tanto, los foros revisores no deben intervenir con las determinaciones de hecho de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad. González Hernández v. González Hernández, 181 DPR 746, 777 (2011).

**III**

A. El Centro de Patología, la doctora Garrastegui Carde y el doctor Vizcarrondo Terrón nos plantean primeramente que el Tribunal de Apelaciones erró al resolver que como (1) el incidente en cuestión fue la primera falta de la doctora Torres Álvarez; (2) esta no incurrió en un patrón de conducta impropia o desordenada o en una violación reiterada de las reglas y reglamentos del Centro de Patología; (3) tampoco fue amonestada ni sancionada antes de ser despedida, y (4) no se demostró que la señora Reyes Millán hubiese sufrido daños físicos graves o necesitado recibir atención médica, el despido de esta fue injustificado. Igualmente, ese foro intimó que pesó en su decisión el hecho que la señora Reyes Millán hubiese desistido de la querella criminal en contra de la doctora Torres Álvarez. Además, los peticionarios argumentan que el foro apelativo intermedio erró al sustituir las determinaciones de hecho del Tribunal de Primera Instancia por sus propias apreciaciones de la prueba testifical. Coincidimos en que los errores se cometieron.

En este caso quedó probado a satisfacción del Tribunal de Primera Instancia que la doctora Torres Álvarez agredió a la señora Reyes Millán al agarrarla fuertemente por el brazo y halarla hacia fuera de su oficina. Igualmente, quedó demostrado que la doctora amenazó a la señora Reyes Millán al decirle que si la hubiera encontrado el día anterior no sabía lo que habría sido capaz de hacerle. Tampoco hay duda de que todo lo anterior sucedió en horas laborables, en el lugar de trabajo y frente a los demás empleados, lo que tuvo el efecto directo de interrumpir el funcionamiento ordinario del Centro de Patología. Por su parte, el reglamento del Centro de Patología, en virtud del principio rector de la Ley Núm. 80, el cual establece que los patronos pueden adoptar causales adicionales a las enumeradas en ese estatuto para el despido justificado de sus empleados siempre y cuando las mismas sean razonables y busquen proteger el buen funcionamiento de la empresa, prohibía expresamente este tipo de actuaciones. Específicamente, el reglamento disponía en su página ocho lo siguiente:

ACCIONES DISCIPLINARIAS

El CPAPR [Centro de Patología] tomará medidas correctivas cuando la conducta de un empleado no se ajuste a las normas establecidas. Aquel empleado que incumpla cualquiera de sus deberes como empleado se le podrá imponer las siguientes sanciones: amonestación verbal, amonestación escrita, suspensión de empleo y sueldo, y/o destitución, sin que necesariamente se deba seguir ese orden. Las sanciones deberán ser proporcional [sic] a la gravedad de la falta cometida. A continuación se enumera los actos que justifican la imposición de medidas

disciplinarias [...].Apéndice, pág. 24.

Más adelante, en la página diez, el Reglamento establecía que los siguientes actos o conducta justifican la imposición de medidas disciplinarias:

15. Iniciar, incitar, causar o participar en una disputa, argumentación, discusión desordenada que altere el orden o interrumpa las labores.

16. Agresión física o incitación a la misma o amenazas al bienestar de cualquier persona en los terrenos del Centro. Apéndice, pág. 25.

Por lo tanto, resolvemos que la decisión de los directores del Centro de Patología de despedir a la doctora Torres Álvarez estuvo respaldada por las disposiciones del reglamento de personal de la institución, las cuales, a su vez, entendemos que son razonables a la luz del principio rector de la Ley Núm. 80. Si bien la amenaza y agresión a la señora Reyes Millán —quien estaba embarazada al momento de los hechos— en horas laborables, en el lugar de trabajo y en presencia de otros empleados, fue la primera ofensa que cometió la doctora Torres Álvarez como empleada del Centro de Patología, debido a la gravedad y al impacto que tales actuaciones tuvieron sobre el orden, la seguridad, la eficiencia y el ambiente de trabajo, concluimos que el despido estuvo justificado. Véase Rivera v. Pan Pepín, supra. Dado los hechos de este caso, el despido fue una sanción proporcional a la gravedad de la conducta en que incurrió la doctora Torres Álvarez. Esa actuación tampoco fue arbitraria o caprichosa.

La ley no requiere que un patrono espere a que una empleada que amenazó y agredió a una compañera durante horas laborables y en los predios de la empresa, cometa una segunda o tercera amenaza o agresión para que pueda ser cesanteada conforme a la Ley Núm. 80. **Un patrono no tiene por qué permitir un ambiente de trabajo donde los empleados estén impedidos de trabajar en paz y con la tranquilidad de que no van a ser agredidos ni amenazados por sus compañeros.**

Resolver lo contrario implica exponer al patrono, quien es responsable de la seguridad de todos sus empleados, a responder legalmente por las futuras actuaciones del empleado agresor. En este caso el potencial de que se repitiera la conducta de la doctora Torres Álvarez quedó de manifiesto cuando esta exigió una segunda reunión con los empleados que entendía eran responsables de que no hubiese podido participar de la celebración de cumpleaños. **La Ley Núm. 80 no puede ser una camisa de fuerza para un patrono que simplemente actúa diligentemente en protección de la seguridad de los demás empleados que trabajan en la institución.**

En casos como este -donde ocurre una agresión- no se requiere que la persona agredida sufra un daño corporal que requiera atención médica. El simple hecho de utilizar fuerza física e iniciar un forcejeo en contra de otro empleado, **particularmente cuando se trata de una mujer embarazada,** es más que suficiente para entender que el

empleado agresor representa una amenaza en contra del buen funcionamiento de la empresa. Una agresión física, **en cualquiera de sus manifestaciones**, transgrede los principios más elementales de "sana convivencia social, respeto al prójimo, a su dignidad y a su autoestima". Torres Solano v. PRTC, supra. pág. 517, n.5. "El lugar de trabajo, **sea este público o privado**, no puede estar exento de la aplicación de estos principios básicos de convivencia humana". (Énfasis suplido) Íd. Tampoco entendemos que es pertinente para este caso el resultado del proceso criminal para sancionar la agresión y amenaza por la vía penal.

B. Por último, es menester señalar que el Tribunal de Apelaciones no brindó explicación alguna para descartar parte de las determinaciones de hecho del Tribunal de Primera Instancia relacionadas al incidente que origina este caso. Esas determinaciones, según la sentencia del foro primario, están basadas en los testimonios de la señora Reyes Millán y la doctora Garrastegui Carde, a los que ese foro adjudicó entera credibilidad. Apéndice, págs. 14, 34-35. El Tribunal de Apelaciones se apartó de esas determinaciones de hechos y, en cambio, concluyó que no se probó a nivel de instancia que la doctora Torres Álvarez incurriera en una "agresión física o incitación a la misma o amenazas al bienestar de cualquier persona en los terrenos del Centro". Apéndice, pág. 83. Particularmente, determinó expresamente que no se demostró que "la doctora Torres [Álvarez] incurrió en algún tipo de conducta que

tuviese el propósito de agredir o amenazar a la señora Reyes [Millán]". Apéndice, pág. 84. Además, descartó las determinaciones de hecho relacionadas a que el incidente en cuestión interrumpió las labores en el Centro de Patología y afectaron el ambiente de tranquilidad y armonía de la oficina.

Para descartar parte de las determinaciones de hecho del Tribunal de Primera Instancia basadas en prueba testifical, y en cambio darle credibilidad al testimonio de otra testigo, en este caso al de la doctora Torres Álvarez, tiene que darse alguna de las excepciones a la norma firmemente establecida en nuestro ordenamiento que dispone que los foros apelativos deben brindar gran deferencia a la adjudicación de credibilidad a los testigos y a las determinaciones de hecho del Tribunal de Primera Instancia. No obstante, eso no surge del expediente. Por lo tanto, concluimos que erró el foro apelativo intermedio al no brindarle deferencia a las determinaciones de hecho del Tribunal de Primera Instancia que establecen que la doctora Torres Álvarez amenazó y agredió a la señora Reyes Millán, en horas laborables, en el lugar de trabajo y en presencia de otros empleados, inclusive la supervisora de ambas.

**IV.**

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones y se confirma el dictamen del Tribunal de Primera Instancia que declaró sin lugar la demanda.

Se dictará Sentencia de conformidad.


                              Rafael L. Martínez Torres
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Elba Torres Álvarez, t/c/c Elba Torres Matundan, t/c/c Elba Matundan, su esposo Mitchell M. Matundan Marisigan y la Sociedad Legal de Gananciales compuesta por ambos; Philip Conrad Matundan; y Kevin Conrad Matundan<br><br>Recurridos<br><br>v.<br><br>Centro de Patología Avanzada de Puerto Rico, C.S.P.; Dra. Delba I. Garrastegui Carde, su esposo, Dr. Francisco J. Vizcarrondo Terrón y la Sociedad Legal de Gananciales compuesta por ambos; Corporación X; Corporación de Seguros X, Y y Z; Sutano de Tal, A, B, y C.<br><br>Peticionarios | CC-2014-0868 |
| --- | --- |

SENTENCIA

En San Juan, Puerto Rico, a 13 de octubre de 2015.

Por los fundamentos expuestos, en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se confirma el dictamen del Tribunal de Primera Instancia que declaró sin lugar la demanda.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió una Opinión de Conformidad a la cual se unió el Juez Asociado señor Rivera García.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Elba Torres Álvarez, t/c/c Elba Torres Matundan, t/c/c Elba Matundan, su esposo Mitchell M. Matundan Marisigan y la Sociedad Legal de Gananciales compuesta por ambos; Philip Conrad Matundan; y Kevin Conrad Matundan | |
|---|---|
| **Recurridos** | |
| v. | CC-2014-0868 |
| Centro de Patología Avanzada de Puerto Rico, C.S.P.; Dra. Delba I. Garrastegui Carde, su sposo, Dr. Francisco J. Vizcarrondo Terrón y la Sociedad Legal de Gananciales compuesta por ambos; Corporación X; Corporación de Seguros X, Y y Z; Sutano de Tal, A, B, Y C. | |
| **Peticionarios** | |

Opinión de conformidad emitida por la Jueza Asociada señora Pabón Charneco, a la cual se unió el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, a 13 de octubre de 2015.

Estoy conforme con la muy bien fundamentada Opinión que emite hoy una Mayoría del Tribunal. Bajo los parámetros de la Ley Núm. 80, *infra,* y su jurisprudencia interpretativa, el despido de una empleada que amenazó y agredió a una compañera en el lugar de empleo es justificado, aunque haya sido su primera ofensa. Como correctamente se expone en la Opinión Mayoritaria, lo esencial al analizar casos de despido en los cuales no existe un patrón de incumplimiento con las normas

establecidas por el patrono es el impacto que ese acto tiene en el buen funcionamiento de una empresa, de modo que constituiría una imprudencia para el patrono esperar a que la conducta se repita para entonces destituir al empleado.

Si bien la Ley Núm. 80, *infra,* desalienta el despido por una primera falta, este estatuto no pretende ser una muralla insuperable entre el derecho del trabajador a no ser despedido sin una justa causa *vis à vis* el interés de un patrono de velar por el funcionamiento eficiente de su negocio. Máxime cuando el patrono actúa amparado en las normas razonables de su empresa y en protección del bienestar de sus empleados.

Reitero mi conformidad con la Opinión que antecede. No obstante, toda vez que he notado una tendencia de los jueces de nuestros tribunales de analizar pleitos de despido injustificado como si estos fueran jefes de Recursos Humanos del patrono querellado, aprovecho este caso para expresarme por separado en cuanto a este particular.

I

En el caso de autos le correspondía al foro *a quo* determinar si el despido de una empleada que amenazó y agredió a otra empleada en el lugar de empleo fue justificado, a pesar de que esa fue su primera ofensa.

Como muy bien se discute en la Opinión que antecede, al momento del incidente que redundó en el despido de la Dra. Elba Torres Álvarez (doctora Torres Álvarez o

recurrida) estaba vigente el Reglamento de Trabajo, Manual de Empleado y Normas de Conducta del Centro de Patología (Reglamento), de su propia autoría. El Reglamento disponía varias acciones disciplinarias, entre ellas el despido. *Inter alia,* y pertinente a la controversia de autos, establecía que la siguiente conducta justificaba la imposición de medidas disciplinarias a un empleado, a saber:

> 15. Iniciar, incitar, causar o participar de una disputa, argumentación, discusión desordenada que altere el orden o interrumpa las labores.
>
> 16. Agresión física o incitación a la misma o amenazas al bienestar de cualquier persona en los terrenos del Centro. *Apéndice*, pág. 25.

Según consta en autos, el despido surge como consecuencia de la infracción por parte de la doctora Torres Álvarez de las precitadas normas reglamentarias. En síntesis, el acto específico que dio lugar a su despido surgió cuando, luego de varios incidentes -discutidos en detalle en la Opinión Mayoritaria- la recurrida se dirigió a la oficina de la Sra. Johanna Reyes Millán la agarró fuertemente por el brazo y la haló hacia el pasillo lo cual culminó en un forcejeo entre ambas.[4] Esta versión de los

---

[4] Es importante resaltar que al momento de ese incidente, la señora Reyes Millán estaba embarazada. Si bien ese hecho es altamente reprochable y constituye un *agravante* al acto de agresión que dio lugar al despido de la Dra. Elba Torres Álvarez, no es determinante a la hora de destituir a un empleado por agredir a otro en el lugar de empleo. Ya en ocasión anterior – y hoy me reafirmo - he reprochado este tipo de conducta que lacera el derecho básico de un empleado a ganarse su sustento económico de manera digna. Véase, *Rosa Maisonet v. ASEM,* 2015 TSPR 19, 192 DPR __. Una agresión en el lugar de empleo, en cualquiera de sus manifestaciones, ya sea entre empleados del mismo sexo, de hombre a mujer o *viceversa* es un acto intolerable y lacera las normas

hechos le mereció entera credibilidad al Tribunal de Primera Instancia.

No obstante, a pesar de que quedó demostrado a satisfacción del foro primario que la doctora Torres Álvarez agredió y amenazó a la señora Reyes Millán durante horas laborables y que esa conducta tuvo el efecto directo de interrumpir el funcionamiento ordinario del lugar donde esta laboraba, el Tribunal de Apelaciones optó por revocar la decisión de ese foro de desestimar la Demanda presentada por la recurrida en lo relativo a la causa de acción por despido injustificado.

*Inter alia,* el foro *a quo* razonó que, (1) no se demostró que la doctora Torres Álvarez incurriera en una conducta tan lesiva al funcionamiento y buen orden de la empresa que justificara su despido ante una primera falta y (2) que no se probó que la conducta en la que incurrió la recurrida constituyera una agresión o amenaza ni que esta fuera parte de un patrón de conducta impropio o desordenado.

Además, el Tribunal de Apelaciones destacó en su Sentencia que (1) la señora Reyes Millán desistió del proceso criminal que había iniciado contra la doctora Torres Álvarez y que (2) no se demostró que la señora Reyes Millán hubiese sufrido daños físicos graves o necesitado

---

de sana convivencia que deben permear los talleres laborales de Puerto Rico.

recibir atención médica como consecuencia del incidente entre esta y la recurrida.

De entrada, y como muy bien destaca la Opinión que antecede, estas consideraciones sencillamente no son pertinentes para validar un despido que ocurre como resultado de una agresión entre empleados. Además, soy del criterio que al intimar que estas consideraciones pesaron en su determinación el foro *a quo* se desvió de su función revisora y analizó el caso tomando en consideración cómo hubiesen actuado ellos como jefes en esta situación. Ciertamente, un patrono puede optar por no despedir a un empleado por una primera falta grave, ya sea por razones de índole económica, personal o relacionadas al buen funcionamiento de su negocio. Pero al analizar casos de despido al amparo de la Ley Núm. 80, *supra,* nuestro rol se limita a aplicar el texto de la ley, su jurisprudencia interpretativa, y las normas razonables contenidas en el reglamento del patrono, de haberlo. Si el despido cumple con los estándares jurisprudenciales pertinentes, el tribunal debe desestimar la reclamación de despido injustificado.

Lo que no nos corresponde hacer al adjudicar este tipo de controversia es sustituir el criterio del patrono querellado por lo que hubiéramos hecho en su lugar ante los hechos particulares del caso ante nuestra consideración. Es decir, el criterio decisorio no puede ser qué hubiéramos decidido nosotros **como patronos** en una situación similar.

La decisión gerencial de despedir a un empleado le puede parecer personalmente desacertada a un juez ante unos hechos particulares, pero su análisis del caso no puede ser guiado por ese criterio subjetivo.

En este caso el foro apelativo intermedio descartó parte de las determinaciones de hecho del Tribunal de Primera Instancia para sustituirlas por criterios exógenos al análisis que le correspondía hacer al evaluar un despido que está respaldado por el reglamento de personal de un patrono. En ese ejercicio le corresponde a los tribunales analizar si la conducta está prohibida por el reglamento de personal, si las disposiciones reglamentarias que el empleado conocía e infringió son razonables o, en casos de una primera ofensa, si la conducta es tan lesiva que afecta el funcionamiento ordinario del negocio. En otras palabras, que el despido no es el resultado de una actuación caprichosa y arbitraria del patrono y que la decisión fue con miras a proteger la buena marcha de la empresa.

Conforme hemos mencionado, el despido de la doctora Torres Álvarez estuvo respaldado por el Reglamento de Personal. Como vimos, el Reglamento prohíbe, entre otras cosas, incitar o iniciar disputas o discusiones que interrumpan las labores y las agresiones físicas y amenazas a otros empleados. No existe controversia de que la doctora Torres Álvarez agredió y amenazó a otra empleada durante horas laborables por lo que su conducta claramente violó el Reglamento. Ciertamente, una norma que prohíba las

agresiones en el taller de trabajo sin duda es razonable y tiene el fin principalísimo de velar por el buen y normal funcionamiento de un negocio. Por lo tanto, no puede considerarse que ese despido sea uno injustificado, aun cuando sea una primera ofensa. Ello debido al impacto directo que esa conducta tiene sobre el orden y la seguridad en el lugar de empleo. Sería un contrasentido exigirle a un patrono que espere a que este tipo de conducta se repita para poder despedir al empleado agresor.

Es entendible que en ciertas circunstancias no estemos completamente de acuerdo con el curso disciplinario de un patrono de despedir a un empleado por una primera falta, **pero ese sentir no puede nublar nuestra función judicial al interpretar la Ley Núm. 80,** *supra.* El hecho de que pensemos que un patrono debió considerar algún elemento al momento de despedir a un empleado, no significa que si no lo hizo ese despido automáticamente es injustificado. Lo esencial es analizar si la acción del patrono de despedir a un empleado en una primera ofensa cumple con los requisitos jurisprudenciales que hemos desarrollado en ese tema, a saber: (1) que el despido esté respaldado por las normas de la empresa; (2) que esas normas sean razonables y, (3) que la conducta que dio lugar al despido sea tan lesiva que afecte el funcionamiento ordinario del negocio.

Por ende, espero que los tribunales inferiores se limiten al análisis anterior y cesen la práctica de colocarse en el lugar del Departamento de Recursos Humanos

de un negocio al momento de analizar casos de despido injustificado. Nuevamente, en lo personal podemos pensar que en una situación particular, como patronos del negocio, hubiésemos seguido otro curso de acción en lugar de despedir al empleado. No obstante, ni la Ley Núm. 80, *supra*, ni nuestros precedentes en este tema, ni la esencia de la función judicial nos permiten convertirnos en árbitros de cada decisión de recursos humanos en las empresas puertorriqueñas. Como jueces nos corresponde analizar y aplicar el derecho sin dejar que nuestro sentir personal en cuanto a un despido en particular permee las decisiones que emitimos.

Debido a que la Opinión que antecede refleja y fomenta este análisis, estoy conforme con la decisión que hoy se anuncia.

Mildred G. Pabón Charneco
Jueza Asociada